**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| FCFS, INC., d/b/a Gateway Trade Funding Company, an Illinois corporation, | ) Case No.: 1:24-cv-12295 |
| | ) |
| | ) Judge: |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| LEGION ELECTRIC VEHICLES, LLC, a Colorado limited liability company, FREEDOM GOLF CARTS, LLC, a Colorado limited liability company, FREEDOM GOLF CARTS OPERATIONS LLC, a Colorado limited liability company, and KENNETH M. ARRINGTON, | ) |
| Defendants. | ) |

**<u>VERIFIED COMPLAINT</u>**

Plaintiff, FCFS, Inc. d/b/a Gateway Trade Funding Company (*"Plaintiff"*), by and through its undersigned counsel, hereby files its Verified Complaint against Legion Electric Vehicles, LLC (*"Legion"*), Freedom Golf Carts, LLC (*"Freedom Carts"*), Freedom Golf Carts Operations LLC (*"Freedom Operations"*), and Kenneth M. Arrington (*"Arrington"*; together with Freedom Carts and Freedom Operations, the *"Guarantors"*) for breach of contract and conversion. Plaintiff alleges as follows:

**<u>NATURE OF THE CASE</u>**

1. This is an action for breach of contract, conversion, and enforcement of remedies pursuant to the operative contracts in this matter, as well as for the appointment of a receiver pursuant to Rule 66 of the Federal Rules of Civil Procedure (*"Rule 66"*) and Rule 66.1 of the Local Rules for the United States District Court, Northern District of Illinois (the "*Local Rules*").

## THE PARTIES

2.      Plaintiff is an Illinois corporation with a principal place of business at 600 Central Avenue, Suite 212, Highland Park, Illinois 60035.

3.      Legion is a Colorado limited liability company with a principal place of business at 9017 Stonecrest Way, Highlands Ranch, Colorado 80129.  Arrington is the sole member of Legion.

4.      Freedom Carts is a Colorado limited liability company with a principal place of business at 9017 Stonecrest Way, Highlands Ranch, Colorado 80129.  Arrington is the sole member of Freedom Carts.

5.      Freedom Operations is a Colorado limited liability company with a principal place of business at 9017 Stonecrest Way, Highlands Ranch, Colorado 80129.  Arrington is the sole member of Freedom Operations.

6.      Arrington is an individual who is a citizen of the State of Colorado and who resides at 9017 Stonecrest Way, Highlands Ranch, Colorado 80129.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because it is a civil action between citizens of various States within the United States, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      Venue is proper in this Court because, pursuant to the agreements described below, each of the defendants agreed that venue is proper in this Court.

**FACTUAL BACKGROUND**

**A.      The Parties' Arrangements**

9.       Plaintiff and Legion are parties to those certain Master Purchase Order Agreement dated May 22, 2023 (the *"Master PO Agreement"*) and Accounts Receivable Purchase Agreement (the *"AR Agreement"*), including Standard Provisions and Definitions (*"SPD"*; together with the Master PO Agreement and AR Agreement, the *"Secured Agreement"*), pursuant to which, among other things, Plaintiff provided funding to purchase golf carts and piece parts and paid freight on behalf of Legion in the amount of $6,226,760.02 (the *"Purchased Inventory"*).  Legion was responsible for assembling the golf carts and selling the assembled golf carts.  Plaintiff retained a perfected security interest in the golf carts and proceeds and Legion assigned customer purchase orders and resulting payments to Plaintiff.  A true and correct copy of the Secured Agreement and financing statement evidencing Plaintiff's perfected security interest in the golf carts and proceeds are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

10.      In connection with the Secured Agreement, Guarantors executed that certain Continuing Unconditional Guarantee (the *"Guarantee"*) pursuant to which, among other things, the Guarantors unconditionally guaranteed, jointly and severally, all amounts due and owing to Plaintiff by Legion, including the amounts due and owing under the Agreement (as defined below). A true and correct copy of the Guaranty is attached hereto as **Exhibit C**.

11.      Legion failed to perform under the Master PO Agreement.  Subsequently, the parties entered into a Mutual Release and Settlement Agreement dated June 19, 2024 (the *"Supplemental Agreement"*), pursuant to which, among other things, Legion and the Guarantors agreed that the amount then owed to Plaintiff was $3,362,176.98 and Legion agreed to pay Plaintiff

$3,000,000.00 pursuant to a payment schedule set forth therein. A true and correct copy of the Supplemental Agreement is attached hereto as **Exhibit D**.

12. In addition, Legion and the Guarantors agreed as follows:

*Entry of Stipulation; Amount; Remedies; Appointment of a Receiver*. Legion's material breach of this Agreement, as set forth in Sections 2(i), (ii) or otherwise, shall constitute and Event of Default under this Agreement and shall entitle FCFS to immediate entry of the stipulation to judgment ("Stipulation to Judgment") attached hereto as Exhibit A, in an amount equal to less any Scheduled Payment(s) or Settlement Payment(s) received prior to the breach ("Stipulated Amount"). FCFS shall be entitled to entry of the Stipulation to Judgment on an ex parte basis without prior notice to Legion, Arrington, or Freedom. Legion and the Guarantors further expressly agree that upon an Event of Default, FCFS may, in addition to the entry of the Stipulations relating to monetary relief attached hereto, and without the necessity of giving prior notice (oral or written) to Legion or the Guarantors, apply to any court having jurisdiction for the appointment of a receiver for Legion and take any or all of the actions set forth herein to prevent dissipation of Legion's assets. *If FCFS elects to seek the appointment of a receiver for Legion at any time after an Event of Default has occurred and is continuing, Legion and the Guarantors, by their execution of this Agreement, expressly consent to the appointment of such receiver, including the appointment of a receiver ex parte.*

Exhibit D, ¶ 2(i)(ii) (emphasis added).

13. The judgments to which the Guarantors consented to separately are attached as Exhibits A-1 through A-3 to the Supplemental Agreement (Exhibit D hereto).

14. As an accommodation to Legion, the parties also entered into that certain First Amendment (the *"First Amendment"*) to the Supplemental Agreement, pursuant to which, among other things, Legion was obligated to pay Plaintiff the Specified Percentage (as defined in the First Amendment). The Supplemental Agreement otherwise remained intact, including with respect to Plaintiff's right to the appointment of a receiver. A true and correct copy of the First Amendment is attached hereto as **Exhibit E**.

15. Following Legion's failure to perform under the Supplemental Agreement, as amended by the First Amendment, the parties entered into that certain Second Amendment to the Supplemental Agreement dated September 12, 2024 (the *"Second Amendment"*; collectively with

the Secured Agreement, the Supplemental Agreement, and the First Amendment, the *"Agreement"*), pursuant to which, among other things, Legion agreed to obtain Plaintiff's prior approval of any Credit Sale (as defined in the Second Amendment). The Supplemental Agreement otherwise remained intact, including with respect to Plaintiff's right to the appointment of a receiver. A true and correct copy of the Second Amendment is attached hereto as **Exhibit F**.

**B.      Defendants Default Under The Parties' Arrangements.**

16.      Legion defaulted under the Agreement as a result of, and without limitation: its consummation of credit sales without Plaintiff's approval; its failure to maintain minimum payment obligations to Plaintiff; its diversion of sale proceeds to a separate, junior lender; its failure to make required, ongoing disclosures to Plaintiff under the Agreement; its conversion of Plaintiff's assets; its corporate change in control; and its incurring of debt to another creditor (collectively, the *"Existing Defaults"*).

17.      On November 12, 2024, Plaintiff sent Legion and the Guarantors notification of the Existing Defaults and a demand to pay all amounts then due and owing, which as of that date was $2,153,609.58 (exclusive of attorneys' fees and collection costs) (the *"Outstanding Balance"*). A true and correct copy of the November 12, 2024, demand letter is attached hereto as **Exhibit G**. As of the date hereof, neither Legion nor any of the Guarantors have disputed the existence of the Existing Defaults that were described in Exhibit G.

18.      As of the date hereof, neither Legion nor any of the Guarantors have paid the Outstanding Balance and they remain in default of the Agreement and the Guarantee.

**C.      Conduct Warranting a Receiver.**

19.      As noted, Legion and the Guarantors specifically consented to the appointment of a receiver, if the Plaintiffs seek appointment of a receiver following an Event of Default. Exhibit

D, ¶ 2(i)(ii).  Specifically, the appointment of a receiver is authorized—on an *ex parte* basis—in the event that Legion: (a) deprives Plaintiff of access to Legion's bank accounts so that Plaintiff may verify customer receipts; (b) fails to provide Plaintiff with electronic records of all customer invoices, inventory reports, statuses of Legion golf carts (*i.e.*, crated, partially assembled, fully assembled), and confirmation of payments by customers, floor plan lenders, or Legion's affiliate Freedom Carts; (c) fails to cooperate with Plaintiff's twice-monthly field audit; dissipates its assets by transferring any asset greater than $10,000 for lack of consideration (individually and collectively, the *"Receivership-Trigger Events"*).

20.     As set forth in Exhibit G, Legion has committed one or more Receivership-Trigger Events, including but not limited to: opening a new bank account without Plaintiff's consent; failing to provide Plaintiff with visual access to the bank account; and sale of Plaintiff's collateral and refusing to deliver the sale proceeds to Plaintiff.  As a result of these actions alone, the Plaintiff has discovered that $164,866.48 was transferred to account #xxxx9112.  Pursuant to the Agreement, a portion of at least $95,715 of those funds should have been surrendered to Plaintiff.  This amount includes $18,495 from Thoroughbred from the sale of two golf carts and an additional $77,220, all of which came from Binadula representing the sale proceeds of other golf carts. Despite Plaintiff's several requests, Legion and the Guarantors have neither remitted those funds to Plaintiff nor explained what happened to them.

21.     Pursuant to the Supplemental Agreement, based on the several Events of Default that have occurred and Legion and the Guarantors' consent to the appointment of a receiver, the foregoing warrants the appointment of an equity receiver under Rule 66.

## COUNT I – BREACH OF CONTRACT

22. Plaintiff re-alleges, restates and incorporates by reference paragraphs 1 through 21 above as paragraph 22 as if fully set forth herein.

23. The Agreement is a valid and enforceable contract between Plaintiff and Legion.

24. Legion has defaulted under the terms of the Agreement as a result of, and without limitation, the Existing Defaults.

25. Plaintiff has performed all of its duties and obligations under the Agreement, and all conditions precedent to Plaintiff's enforcement of the Agreement have been performed or otherwise excused.

26. Plaintiff has demanded payment from Legion for all amounts due and owing under the Agreement, but Legion has failed to make payment as required under the Agreement.

27. As of November 12, 2024, Plaintiff has been damaged by Legion's breach of the Agreement in an amount not less than $2,153,609.58 (exclusive of attorneys' fees and collection costs).

28. Legion stipulated to entry of a judgment as evidenced by Exhibit A to the Supplemental Agreement.

## COUNT II – BREACH OF GUARANTEE

29. Plaintiff re-alleges, restates and incorporates by reference paragraphs 1 through 28 above as paragraph 29 as if fully set forth herein.

30. Guarantors executed the Guarantee, pursuant to which, among other things, the Guarantors unconditionally guaranteed, jointly and severally, to pay all amounts due and owing to Plaintiff by Legion, including the amounts due and owing under the Agreement.

31. Legion has defaulted under the terms of the Agreement as a result of, and without limitation, the Existing Defaults.

32. Plaintiff has performed all of its duties and obligations under the Guarantee, and all conditions precedent to Plaintiff's enforcement of the Guarantee have been performed or otherwise excused.

33. Plaintiff has demanded payment from Guarantors for all amounts due and owing under the Agreement, but Guarantors have failed to make payment as required under the Guarantee.

34. As of November 12, 2024, Plaintiff has been damaged by Legion's breach of the Agreement in an amount not less than $2,153,609.58 (exclusive of attorneys' fees and collection costs). The Guarantors are liable to Plaintiff for these amounts under the terms of the Guarantee.

35. The Guarantors each stipulated to entry of a judgment as evidenced by Exhibit A to the Supplemental Agreement.

### <u>COUNT III – APPOINTMENT OF RECEIVER</u>

36. Plaintiff re-alleges, restates and incorporates by reference paragraphs 1 through 35 above as paragraph 36 as if fully set forth herein.

37. Pursuant to the Agreement, Legion and the Guarantors specifically consented to the appointment of a receiver—on an *ex parte* basis—in the event of any Receivership-Trigger Event.

38. One or more Receivership-Trigger Events have occurred as set forth in Exhibit G.

39. Pursuant to the Agreement, the foregoing warrants the appointment of an equity receiver under Rule 66.

40. Based upon the foregoing, Plaintiff is entitled to the appointment of an equity receiver over Legion under the Agreement and pursuant to Rule 66.

**WHEREFORE**, Plaintiff, respectfully requests judgment be entered in its favor and against Defendants, and that this Court grant Plaintiff the following relief:

(a) Enter judgment on Count I in Plaintiff's favor and against Legion, in an amount not less than $2,153,609.58, plus all pre-judgment and post-judgment interest, attorneys' fees and costs, and grant such other relief as the Court deems equitable and just;

(b) Enter judgment on Count II in Plaintiff's favor and against the Guarantors, in an amount not less than $2,153,609.58, plus all pre-judgment and post-judgment interest, attorneys' fees and costs, and grant such other relief as the Court deems equitable and just;

(c) Appointment of a receiver over Legion.

Respectfully submitted,

Dated: November 27, 2024

By: /s/ *Scott N. Schreiber*

**Clark Hill PLC**
Scott N. Schreiber (ARDC # 6191042)
Travis J. Eliason (ARDC #6299722)
130 E. Randolph Street, Suite 3900
Chicago, Illinois 60601
Tel: 312-985-5595
sschreiber@clarkhill.com
teliason@clarkhill.com

*Attorneys for Plaintiff*

9

## VERIFICATION

I, Gary Edidin, as CEO & Chairman of FCFS, Inc. d/b/a Gateway Trade Funding Company,

certify under penalty of perjury that the foregoing is true and correct, except as to matters therein

stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid

that he verily believes the same to be true.

Signed under the pains and penalties of perjury this ___ day of November, 2024.

FCFS, Inc.
d/b/a Gateway Trade Funding Company
Gary Edidin,
CEO & Chairman