**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FCFS, INC., d/b/a Gateway Trade Funding Company, an Illinois corporation, | ) |
| | ) |
| | )   Case No. 1:24-CV-12295 |
| *Plaintiff*, | ) |
| | )   Judge Sharon Johnson Coleman |
| v. | ) |
| | ) |
| LEGION ELECTRIC VEHICLES, LLC, a Colorado limited liability company, FREEDOM GOLF CARTS, LLC, a Colorado limited liability company, FREEDOM GOLF CARTS OPERATIONS LLC, a Colorado limited liability company, and KENNETH M. ARRINGTON, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| *Defendants*. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff FCFS, Inc., d/b/a Gateway Trade Funding Company ("FCFS") brings a complaint against Defendants Legion Electric Vehicles, LLC ("Legion"), Freedom Golf Carts, LLC ("Freedom Carts"), Freedom Golf Operations LLC ("Freedom Operations"), and Kenneth M. Arrington (collectively, "Defendants"), alleging breach of contract and breach of guarantee by Defendants. Before the Court are three motions filed by FCFS. The first is a motion for summary judgment as to Defendants' liability for breach of the agreements the parties entered into—of which Freedom Carts, Freedom Operations, and Arrington served as guarantors—under which FCFS provided funding to Legion for the purchase of golf cart parts and freight. In their motion, FCFS requests that the Court enforce the judgment the parties stipulated to in those agreements. The second and third motions seek to compel Defendants to comply with an order the Court entered that directed Defendants to provide FCFS and its agents access to their bank accounts and financial information and request that the Court find Defendants in contempt of that order. For the following reasons, the Court grants

FCFS's motion for summary judgment and motion finding Defendants in contempt and dismisses its motion to compel as moot.

**Background**

Though relatively short-lived, this case has a deep factual and procedural history that underpins FCFS's motions for summary judgment, to compel, and to find Defendants in contempt. The Court initially sets the undisputed facts as they relate to FCFS's motion for summary judgment before recounting those that relate to the compel and contempt motions.

*A. Undisputed facts relevant to FCFS's motion for summary judgment*

On May 22, 2023, the parties entered into a Master Purchase Order Agreement (the "Master PO Agreement"), and a Accounts Receivable Purchase Agreement (the "AR Agreement"), including Standard Provisions and Definitions, collectively termed the "Secured Agreement." Pursuant to the Secured Agreement, FCFS provided funding to Legion to purchase golf carts and parts and paid freight on behalf of Legion in the amount of $6,226,760.02. FCFS retained a perfected security interest in the golf carts and proceeds, and Legion assigned customer purchase orders and resulting payments to FCFS. In connection with the Secured Agreement, Freedom Carts, Freedom Operations, and Arrington (collectively, the "Guarantors") executed a Continuing Unconditional Guarantee pursuant to which the Guarantors unconditionally guaranteed, jointly and severally, all amounts due and owing to FCFS by Legion.

Legion failed to perform under the Master PO Agreement. Subsequently, on June 19, 2024, the parties entered into a Mutual Release and Settlement Agreement (the "Supplemental Agreement"). Under this agreement, Legion and the Guarantors agreed that the amount then owed to Plaintiff was $3,362,176.98, and Legion agreed to pay FCFS $3,000,000.00 pursuant to a payment schedule set forth therein. Paragraph 2(i)(ii) of the Supplemental Agreement provides as follows:

> *Entry of Stipulation; Amount; Remedies; Appointment of a Receiver.* Legion's material breach of this Agreement, as set forth in Sections 2(i), (ii) or otherwise, shall constitute and [sic] Event of Default under this Agreement and shall entitle FCFS to immediate entry of the stipulation to judgment ("Stipulation to Judgment") attached hereto as Exhibit A, in an amount equal to less any Scheduled Payment(s) or Settlement Payment(s) received prior to the breach ("Stipulated Amount"). FCFS shall be entitled to entry of the Stipulation to Judgment on an ex parte basis without prior notice to Legion, Arrington, or Freedom. Legion and the Guarantors further expressly agree that upon an Event of Default, FCFS may, in addition to the entry of the Stipulations relating to monetary relief attached hereto, and without the necessity of giving prior notice (oral or written) to Legion or the Guarantors, apply to any court having jurisdiction for the appointment of a receiver for Legion and take any or all of the actions set forth herein to prevent dissipation of Legion's assets. If FCFS elects to seek the appointment of a receiver for Legion at any time after an Event of Default has occurred and is continuing, Legion and the Guarantors, by their execution of this Agreement, expressly consent to the appointment of such receiver, including the appointment of a receiver ex parte.

(Dkt. 35, Ex. 1.) Following Legion's failure to perform under the Supplemental Agreement, as amended by the First Amendment, on September 12, 2024, the parties entered into a Second Amendment to the Supplemental Agreement (the "Second Amendment"; collectively with the Secured Agreement, the Supplemental Agreement, and the First Amendment, the "Agreement"). Under the Second Amendment, Legion agreed to obtain Plaintiff's prior approval of any Credit Sale (as defined in the Second Amendment); the Supplemental Agreement otherwise remained intact.

On November 12, 2024, FCFS sent Legion and the Guarantors a notification declaring that Defendants were in default of the Agreement and a demand that they pay all amounts then due and owing, which as of that date was $2,153,609.58. The letter outlined seven events that constituted default (the "Default Events"):

1. Consummating credit sales of golf carts and entering into consignment agreements with customers without approval from FCFS;

2. Failure to make a weekly minimum payment of $10,000 to FCFS on more than six consecutive or non-consecutive weeks;

3. Delivering proceeds from the sale of golf carts owned by FCFS to Northpoint Commercial Finance;

4. Failure to regularly provide invoices, inventory reports, status reports, and other financial information to FCFS;

5. Conversion of FCFS assets by selling golf carts subject to FCFS's perfected security interest;

6. Changing control of Legion by appointing Travis Taylor as COO and removing Arrington's authorization to act unilaterally on behalf of Legion; and

7. Incurring indebtedness to a third-party creditor without FCFS's knowledge or approval.

(Dkt. 1, Ex. G.) For the purposes of FCFS's motion for summary judgment to determine Defendants' liability, Defendants do not dispute Default Events 2, 4, 6, and 7, but do dispute Default Events 1, 3, and 5. (Dkt. 47.) The parties do not dispute that the Agreement is a valid and enforceable contract between FCFS and Legion. Nor do the parties dispute that Legion and the Guarantors each stipulated to entry of a judgment as evidenced by Exhibit A to the Supplemental Agreement. (*Id.*)

B. *Undisputed facts relevant to FCFS's motion to compel and to find in contempt*

On November 27, 2024, two weeks after sending its demand letter to Defendants, FCFS filed its complaint before the Court alleging breach of the Agreement by Legion and the Guarantors and seeking the appointment of a receiver over Legion as provided by the Agreement. (Dkt. 1.) FCFS then filed an emergency motion for appointment of its agent from Creative Planning Business Alliance ("Creative Planning") as the receiver on December 9, 2024. (Dkt. 9.) In addition to detailing the Default Events outlined in its demand letter in support for their motion, FCFS further noted that the Guarantors had been sued in Colorado state court by a creditor seeking replevin of approximately sixty carts from Freedom Carts, many of which, on FCFS's information and belief, were transferred to Freedom Carts by Legion. (*Id.*)

After hearing brief oral argument on FCFS's motion on December 12, 2024, the Court directed the parties to meet and confer on a "Standstill Order" to preserve the status quo ahead of an evidentiary hearing on the appointment of a receiver scheduled for December 18, 2024. Based on this argument, on December 13, the Court entered the Standstill Order, which: (1) prohibited Defendants from transferring any of FCFS's collateral; (2) required Defendants to give Creative Planning "immediate on-site access to any office or facility of Defendants and complete and full visibility and access to all of Defendants' books, records, bank accounts, collateral, and inventory"; (3) prohibited Defendants from making "any expenditures outside the ordinary course of business"; (4) directed Defendants to "deliver all sale proceeds from Legion's assets immediately to [FCFS]"; and (5) directed Defendants to provide FCFS and its authorized agents "with all information, authorizations, and login credentials necessary" to verify Defendants' financial activity from June 19, 2024, to the present. (Dkt. 20.)

But the evidentiary hearing on the appointment of a receiver did not go forward. Instead, on the eve of the hearing, Defendants notified FCFS and the Court that they would consent to the appointment of a receiver, subject to revisions to FCFS's proposed draft receiver order. (Dkt. 31, Ex. C.) This comity amongst the parties, however, was short-lived. After negotiating the text of the receiver order and submitting a proposed order to the Court, Defendants informed the Court that they in fact were not in agreement regarding the extent to which the receiver would be able to access the office, facility, books, records, bank accounts, collateral, and inventory of Freedom Carts and/or Freedom Operations and certain of Arrington's bank accounts. (Dkt. 27.) Accordingly, on December 18, the Court directed the parties to submit a revised agreed proposed order by January 8, 2025, and extended the Standstill Order to that date or the date the Court received an agreed order appointing a receiver, whichever was earlier. (*Id.*)

5

On December 31, 2024, Defendants filed a motion to dismiss FCFS's complaint (Dkt. 28.) In their motion, Defendants informed the Court that, pursuant to a prejudgment order issued by the Colorado state court, Legion and Freedom Carts had surrendered possession of FCFS's and several other third-party creditors' collateral and that the parties were in the process of removing the collateral from Freedom Carts' premises. (*Id.*) Because "there are no tangible assets remaining with Legion or Freedom Golf Carts, over which this Court could exercise jurisdiction or which the Receiver could administer," Defendants argued that the Court should dismiss the action pursuant to principles of abstention. (*Id.*) FCFS did not respond to this motion. Instead, on January 3, 2025, FCFS filed its motions for summary judgment, to compel Defendants to comply with the Standstill Order, and to find Defendants in contempt of the Standstill Order, arguing in the latter two motions that Defendants had failed to comply with several requests for documentation and had transferred funds outside of the ordinary course of business in violation of the Standstill Order.

The action in this case largely came to a close five days later on January 8, 2025, when the Court denied Defendants' motion to dismiss and entered an order appointing a receiver over Legion. (Dkt. 38, 40.) FCFS subsequently moved to discharge the receiver on February 25, 2025, reporting that "sufficient information has been obtained such that the cost of continuing the receivership outweighs what marginal benefit might remain" and that "Legion has ceased operations and does not have assets which necessitate a receivership." (Dkt. 57.) The Court discharged the receiver on March 5, 2025, clearing the way for disposition of FCFS's motions.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505,

6

2510, 91 L. Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 367 (7th Cir. 2019). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citing Fed. R. Civ. P. 56(e)).

## Discussion

### A. Plaintiff's motion for summary judgment

As this matter has been vigorously litigated by the parties through their many motions and briefings, the Court will not belabor what is not in dispute: Defendants defaulted on the terms of the Agreement.

"The elements of a claim for breach of contract are (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 1st Dist. 2004)). As the Court already noted, the parties do not dispute that the Agreement is a valid and enforceable contract between FCFS and Legion. Defendants also do not dispute that they defaulted on the Agreement by failing to: pay the outstanding balance of $2,153,609.58 owed to FCFS; make weekly minimum payments to FCFS; regularly provide financial information to FCFS; maintain Arrington's role as COO of Legion; and incurring indebtedness without FCFS's approval.[1]

---

[1] As to substantial performance, Defendants state in their response that "Plaintiff has not paid all of the 'Remittance Returns' as defined in the paragraph 3(a) of the Second Amendment." Defendants provide no context as to what these

Despite these admissions, and making no argument as to the materiality of these defaulting events, Defendants nevertheless "dispute the facts related to certain events of default and the prospective computation of damages." (Dkt. 45.) But this purported dispute of facts over "certain events" of default is immaterial in the face of the specific, undisputed events that both parties agree constitute default on the Agreement. And as to the "prospective computation of damages," such arguments have no bearing on the present motion for summary judgment, which is concerned with establishing Defendants' liability under the Agreement. Defendants are welcome to dispute any such damages during a prove-up hearing and related briefings.

For these reasons, the Court grants FCFS's motion for summary judgment as to Counts I and II of its complaint.

B. *Plaintiff's motion to compel and motion finding Defendants in contempt of the Standstill Order*

To begin, the Court denies FCFS's motion to compel as moot, as the Court's Standstill Order is both no longer in place and has long been overtaken by events.

The Court next turns to FCFS's contempt motion. Contempt may be civil or criminal, depending on its purpose. *F.T.C. v. Trudeau*, 579 F.3d 754, 769 (7th Cir. 2009) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, 114 S. Ct. 2552, 2557, 129 L.Ed.2d 642 (1994)). "Generally, civil contempt 'is remedial, and for the benefit of the complainant,' while criminal contempt 'is punitive, to vindicate the authority of the court.'" *Id.* (quoting *Bagwell*, 512 U.S. at 827). Civil sanctions fall under two categories: sanctions that "compensate the complainant for his losses caused by the contemptuous conduct," and sanctions that seek to "coerce the contemnor's compliance

---

"Remittance Returns" are nor any argument as to their import on FCFS's summary judgment motion. When a party offers only cursory support of its argument without adequate explanation, the Court "will not fill this void by crafting arguments and performing the necessary legal research." *Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) (quotations omitted); *see also Gross v. Cicero*, 619 F.3d 697, 702 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in [the record].") (quotations omitted). Accordingly, and in light of the thorough, supported explanation of these "Remittance Returns" FCFS provides in their reply, Dkt. 50, the Court finds that Defendants have waived this argument and FCFS substantially performed under the Agreement.

with a court order." *Id.* "When the purpose of sanctions in a civil contempt proceeding is compensatory, a fine, payable to the complainant, must be based on evidence of actual loss." *Autotech Techs. LP v. Integral Rsch. & Dev. Corp.*, 499 F.3d 737, 752 (7th Cir. 2007) (quotations omitted). "When the purpose is to make the defendant comply, the court must consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.* (quotations omitted).

Along with compelling Defendants' compliance with the Standstill Order, FCFS's motion requests that the Court award attorneys' fees and costs in connection with its efforts to obtain Defendants' compliance with the Standstill Order. As such, the Court construes the order as seeking to hold Defendants in civil contempt.

### 1. *The affidavit requirement of Local Rule 37.1*

Before getting into the substance of FCFS's motion, the Court first addresses Defendants' procedural argument that the motion should be denied because FCFS failed to comply with N.D. Ill. Local Rule 37.1. This rule states, in relevant part:

> A proceeding to adjudicate a person in civil contempt of court, including a case provided for in Fed.R.Civ.P.37(b)(2)(A)(vii), shall be commenced by the service of a notice of motion or order to show cause. The affidavit upon which such notice of motion or order to show cause is based shall set out with particularity the misconduct complained of, the claim, if any, for damages occasioned thereby, and such evidence as to the amount of damages as may be available to the moving party.

Citing this local rule, Defendants argue that not only did FCFS not file an affidavit in support of its claims but also that FCFS's motion "contains wild and unsupported statements" and therefore should be denied for failure to comply with Local Rule 37.1. (Dkt. 42.) Furthermore, because they "dispute

the alleged misconduct giving rise to the contempt proceedings," Defendants argue that they are "entitled to have oral evidence taken thereon" pursuant to the local rule. (*Id.*)

The Court is not persuaded by Defendants' arguments. The purpose of Local Rule 37.1 and its affidavit requirement is to ensure that the nonmoving party has sufficient notice of the alleged misconduct and damages sought and has the opportunity to respond. *Cf. Tranzact Techs., Inc. v. 1Source Worldsite*, 406 F.3d 851, 855 (7th Cir. 2005) ("Due process requires a district court to resolve relevant factual disputes—allowing discovery and holding an evidentiary hearing if necessary—in a civil contempt proceeding."); *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 696 (7th Cir. 2010) (explaining that, "in certain limited circumstances," a district court "may treat a show-cause motion as a motion for an order on the merits of the alleged contempt where doing so would not cause prejudice—that is, when it would not violate the alleged contemner's right to notice and an opportunity to be heard"). Though FCFS did not include an affidavit with its motion, it did provide over fifty pages of email correspondence between FCFS and Defendants to meet its burden of proof and place Defendants on notice of the alleged misconduct. (Dkt. 31, Ex. B–J.); *cf. Autotech Techs*, 499 F.3d at 751 (finding that "[o]ne consequence" of plaintiff's failure to provide an affidavit "was that it neglected to provide enough information to carry its burden of proof"). Additionally, Defendants have had a full opportunity to respond to the allegations and file evidence supporting their position that they substantially complied with the Standstill Order. As such, the due-process principles underpinning Local Rule 37.1 have been met and the Court need not deny FCFS's motion for failing to include an affidavit nor hold an oral evidentiary hearing to rule on the merits of the motion.

### 2. *Merits of FCFS's contempt motion*

To succeed on its contempt motion, FCFS must "demonstrate by clear and convincing evidence" that Defendants have "violated the express and unequivocal command of a court order." *Trudeau*, 579 F.3d at 763. Specifically, FCFS must show that (1) the Standstill Order set forth an

unambiguous command; (2) Defendants violated that command; (3) Defendants' violation was significant, meaning it did not substantially comply with the Standstill Order; and (4) Defendants failed to take steps to reasonably and diligently comply with the Standstill Order. *Id.* This violation need not be willful; a district court may find a party in civil contempt if that party "has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Goluba v. Sch. Dist. of Ripon*, 45 F.3d 1035, 1036 (7th Cir. 1995) (internal citations omitted).

Before addressing these elements, it is worth noting that this litigation has caused no shortage of frustration for FCFS, Defendants, and the Court. Between holding emergency hearings in the midst of the holiday season and the briefing of the present motions, the parties have repeatedly chosen the hardest road to accomplish what neither party disputed from the get-go: that the appointment of a receiver was appropriate based on the terms of the Agreement and necessary given the entangled nature of Defendants assets.

This frustration is clear in FCFS's motion and its recounting of Defendants' conduct between December 13, 2024, the date the Court entered the Standstill Order, and January 8, 2025, the date the Court appointed the receiver over Legion. While some of these actions clearly point towards a violation of the terms of the Standstill Order—which *both parties* had a hand in drafting—others show general intransigence on the part of Defendants' in bringing this matter to a swift resolution. Though it has been a captive audience to these proceedings, the Court will not infer malice or ill intent in Defendants' actions. Nor will it use FCFS's motion as a vehicle to reward FCFS's efforts to comply with the Standstill Order; this is a motion for civil contempt of the Court, not of opposing counsel.

Instead, the Court focuses its analysis only on the conduct that directly touches and concerns the Standstill Order. As noted in the background section of this opinion, the Standstill Order: (1) prohibited Defendants from transferring any of FCFS's collateral; (2) required Defendants to give Creative Planning "immediate on-site access to any office or facility of Defendants and complete and

full visibility and access to all of Defendants' books, records, bank accounts, collateral, and inventory"; (3) prohibited Defendants from making "any expenditures outside the ordinary course of business"; (4) directed Defendants to "deliver all sale proceeds from Legion's assets immediately to FCFS"; and (5) directed Defendants to provide FCFS and its authorized agents "with all information, authorizations, and login credentials necessary" to verify Defendants' financial activity from June 19, 2024, to the present. (Dkt. 20.)

Defendants' failure to provide FCFS's and its agents with financial information following the entry of the Standstill Order fits the bill. In its motion, FCFS states that on December 13, 2024, Creative Planning sent an agent to Defendants' facility in Colorado to conduct a site visit. Ahead of and during the site visit, the agent requested numerous financial documents that she was entitled to under the Standstill Order, namely: "detailed inventory reports, invoices, purchase orders, bills of lading, and evidence and explanations of payments between the Defendants and loan proceeds or advances received from or payments made to their other creditors." (Dkt. 31, 43, Ex. 1.) During the visit, the agent was told by Travis Taylor, COO of Legion, that the information was available in hard copy and on a Google drive. But Defendants did not provide the agent with access to this information in either form. In fact, between the Court's entry of the Standstill Order on December 13 and appointment of the receiver on January 8, Defendants failed to provide the agent with all the documents she requested. (Dkt. 43, Ex. 1.)

Defendants raise two arguments—supported by an affidavit from Arrington, Dkt. 45, Ex. 1— that, despite failing to provide the agent with the requested financial information, they nevertheless substantially complied with the Standstill Order so as to avoid contempt sanctions. First, Defendants argue that they believed that they previously gave the requested business records to a Mr. Jeffrey Heyn, who they understood to be an agent of FCFS as far as the Standstill Order was concerned, and that they communicated this belief to FCFS via email on January 7, 2025, along with images of the

production. Second, Defendants argue that because they provided Creative Planning with access to the requested Google drive on January 17, they substantially complied with the Standstill Order.

Both these arguments are unavailing. As noted by FCFS, "Mr. Heyn works for another lender which has administrative rights with respect to [FCFS's] arrangements with Defendants" and is not affiliated with Creative Planning or its agents. (Dkt. 43.) Even if Defendants had previously provided Heyn with some of the requested records, the Standstill Order explicitly directed Defendants to provide Creative Planning and its agents and representatives with *immediate* access to this information. Defendants did not notify FCFS of their alleged prior production to Heyn until January 7, nearly a month after the Court entered the Standstill Order and four days after FCFS brought their contempt motion. More troublingly, Defendants did not provide Creative Planning with the requested production until January 17, nine days after the Court entered its order appointing a receiver. (Dkt. 42, Ex. A.).

Charitably put, this conduct falls woefully short of substantial compliance. Defendants' failure to comply with the Standstill Order was not only blatant but also required FCFS to expend significant effort to move litigation forward. As detailed by the record prepared by both parties in their briefings, between December 18 and January 8, FCFS repeatedly reached out to Defendants requesting that they provide the production and access ordered by the Court in the Standstill Order. Be it out of malice or ignorance, Defendants failed to do so, and as a result not only failed to comply with the Court's order but also unnecessarily extended this litigation at the expense of FCFS.

The Court's orders "are not mere suggestions that a party may choose to ignore or follow." *Pope v. United States*, No. 19 C 0145, 2019 WL 9633216, at *2 (N.D. Ill. July 11, 2019) (Coleman, J.) (citing *Pope v. United States*, No. 16-1059-SLD, 2018 WL 11308040 (C.D. Ill. Apr. 20, 2018), *aff'd sub nom. Pope v. Krueger*, 762 F. App'x 347 (7th Cir. 2019)). Because Defendants violated and failed to

13

substantially comply with the Standstill Order entered by the Court on December 13, 2024, the Court finds Defendants in civil contempt of the Court's order.

**Conclusion**

For these reasons, the Court grants Plaintiff's motion for summary judgment [33]. Plaintiff is granted leave to request a prove-up hearing to determine the amount of damages based on Defendants' liability under the Agreement. Plaintiff's motion to compel compliance with the order entered on 12/13/2024 is denied as moot in light of the appointment and subsequent discharge of the Receiver [31]. Plaintiff's motion to find Defendants in civil contempt of the order entered on 12/13/2024 is granted [31]. Plaintiff is granted leave to file a bill of costs for attorneys' fees and costs associated with (1) their efforts to obtain Defendants' compliance with the order entered on 12/13/2024 between 12/19/2024 and 1/8/2025 and (2) bringing and briefing the contempt motion.

**IT IS SO ORDERED.**

Date: 6/12/2025

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge

14