**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FCFS, INC., d/b/a Gateway Trade Funding Company, an Illinois corporation, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:24-cv-12295 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| LEGION ELECTRIC VEHICLES, LLC, a | ) |
| Colorado limited liability company, | ) |
| FREEDOM GOLF CARTS, LLC, a Colorado | ) |
| limited liability company, FREEDOM GOLF | ) |
| CARTS OPERATIONS LLC, a Colorado | ) |
| limited liability company, and KENNETH M. | ) |
| ARRINGTON, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, FCFS, Inc. d/b/a Gateway Trade Funding Company moves for an entry of order (1) awarding damages to Plaintiff following entry of summary judgment as to liability against Defendants Legion Electric Vehicles, LLC ("Legion"), Freedom Golf Carts, LLC ("Freedom Carts"), Freedom Operations LLC ("Freedom Operations"), and Kenneth M. Arrington ("Arrington") (altogether, "Defendants"), and (2) awarding Plaintiff fees and costs it has incurred as a result of Defendants' contemptuous conduct pursuant to a Judgment Order. For the reasons set forth below, the Court grants Plaintiff's Motion [68].

**BACKGROUND**

On November 27, 2024, Plaintiff filed its Complaint asserting claims against Legion for breach of contract (Count I) and against Freedom Carts, Freedom Operations, and Arrington (collectively, the "Guarantors") for breach of the Guaranty (Count II). On December 9, 2024, Plaintiff filed a

1

Motion for Appointment of Receiver ("Receiver Motion") seeking the appointment of Creative Solutions ("Receiver") as the equity receiver over Legion. On December 13, 2024, the Court entered a "Standstill Order," pending resolution of the Receiver Motion, requiring Defendants to provide the proposed Receiver with full visibility and access to all of Defendants' books, records, collateral, and inventory. After Defendants failed to adhere to the Standstill Order, on January 3, 2025, Plaintiff filed a Motion for Entry of Order: (1) Finding Defendants in Contempt, and (2) Compelling Defendants' Compliance with the Order Entered on December 13, 2024 ("Contempt Motion"). That same day, Plaintiff also filed its Motion for Summary Judgment as to Liability Against Defendants ("MSJ").

On January 8, 2025, the Court entered an Order appointing the Receiver over Legion and took the Contempt Motion and MSJ under advisement. The Receiver served in this role until February 25, 2025, when Plaintiff filed a Motion to Discharge Receiver and Approve Receiver's Second and Final Report, stating that "sufficient information has been obtained such that the cost of continuing the receivership outweighs what marginal benefit might remain" and that "Legion has ceased operations and does not have assets which necessitate a receivership." On March 5, 2025, the Court entered an order discharging the Receiver.

The Court, in June of 2025, granted Plaintiff's MSJ and granted Plaintiff leave to request a prove-up hearing to determine the amount of damages it was owed under the Agreement and Guaranty. In that same month, the Court granted Plaintiff's Contempt Motion in part and granted Plaintiff leave to file a bill of costs for attorneys' fees and costs "associated with (1) their efforts to obtain Defendants' compliance with the Standstill Order between 12/19/2024 and 1/8/2025 and (2) bringing and briefing the Contempt Motion. Pursuant to that Judgment Order, Plaintiff brings the present Motion.

As to the damages Defendants owe Plaintiff pursuant to the breached Agreement and Guaranty, Plaintiff filed the Declaration of Gary Edidin ("Edidin Declaration"), the Chairman and

2

CEO of Plaintiff, contemporaneously with its motion stating, "Defendants agreed that, as of June 19, 2024, Plaintiff was owed $3,362,176.98." (Dkt. 68 at *3.) "After that date, the amount was reduced by its receipt of monies from the sale of Legion golf carts ($1,313,267.67), and Plaintiff's credit bid ($306,000.00) on certain carts and parts at a public auction pursuant to the Uniform Commercial Code." (*Id.* at *3-4.) Plaintiff also attests it has incurred fees and costs in connection with the enforcement of its rights under the Agreement and Guaranty in the amount of $515,947.84. (*Id.* at *4.) Accordingly, Plaintiff requests the remaining judgment be entered against the Defendants, jointly and severally, in the amount of $2,258,857.15, plus pre- and post-judgment interest as allowed by applicable law.

Plaintiff additionally filed the Declaration of Travis J. Eliason ("Attorney Declaration"), stating "Plaintiff has incurred $35,796.50 in fees related to Plaintiff's efforts to obtain Defendants' compliance with the Standstill Order for the period from December 19, 2024, through January 8, 2025, as well as the bringing and briefing of the Contempt Motion." (Dkt. 68 at *5.) Plaintiff also attests it incurred $2,014.00 in costs during the period provided for by the Court for services rendered by the then-proposed Receiver in connection with gaining Defendants' compliance with the Standstill Order. Accordingly, Plaintiff requests Defendants be ordered to pay Plaintiff the sum of $37,810.50 as a result of Defendants' contemptuous conduct, and that a rule to show cause be issued to Arrington, individually and as representative of the remaining Defendants, should Defendants fail to remit payment.

## I.  DAMAGES PURSUANT TO THE AGREEMENT AND GUARANTY

Arrington does not dispute Plaintiff's calculation of the sum Defendants owe but instead argues the Court should reduce the damages by the amounts expended in connection with the Receiver that were "outside the scope of the Order Discharging Receiver". (Dkt. 73 at *3.) Specifically, he argues, while the Receiver was appointed to facilitate a sale of the Companies' assets, they did nothing

to pursue a commercially reasonable sale of the Companies' assets. (*Id.* at *4.)  He argues the Receiver could have sold all of the inventory in the ordinarily course of business for close to retail value but instead allowed the Plaintiff and other secured creditors to conduct a bulk UCC foreclosure sale that realized less than wholesale value for the assets. (*Id.*)  Moreover, Arrington argues the Motion seeks damages for the Receiver's fees and expenses (over $100,000) outside the scope of the Order Discharging Receiver which only required the Final Report. (*Id.* at *4-5.)  Finally, he concludes "the Receiver's appointment in this action was wholly unnecessary as the Companies had ceased operating, the Companies' assets were subject to a replevin order in the related Colorado action,[1] and the Receiver had no expertise in the subject matter of the Companies' business and impeded the commercially reasonable disposition of the Companies' assets." ("*Id.* at *4.)

In a nearly identical Response, Legion, Freedom Operations, and Freedom Carts also argue the Court should reduce the damages by the amounts expended in connection with the Receiver that were "outside the scope of the Order Discharging Receiver" (Dkt 74 at *3.)  Specifically, they argue that many of the expenditures that Plaintiff seeks occurred before the Receiver was appointed and after the Receiver was discharged—expenses that were not approved by the Court. (*Id.* at *4-5.)  They finally emphasize that the Plaintiff acknowledged that the "costs of the receivership outweighed the benefits in its motion to discharge the receiver," making denying any amounts outside of the Receiver's Final Report, appropriate. (*Id.* at *4-5.)

---

[1] In its Order Appointing Receiver, the Court took judicial notice of an action in the District Court of Arapahoe County of the State of Colorado captioned *Automotive Finance Corporation v. Freedom Golf Carts, LLC, et al.*, Case no. 2024CV 032460 (the "Colorado Lawsuit") wherein Automotive Finance Corporation and Northpoint Commercial Finance Corporation alleged, inter alia, that they were secured creditors of Freedom Golf Carts, LLC and Freedom Golf Carts Operations, LCC (collectively, the "Freedom Defendants") and sought to enforce lien rights over certain property of the Freedom Defendants (the "Freedom Inventory"). (Dkt. 40 at *6.)

Plaintiff, in its Reply, emphasizes Defendants do not contest that Defendants owe Plaintiff $1,743,909.31 from the principal balance of the agreement, $311,294.60 in attorney's fees incurred by Plaintiff in connection with its enforcement of the Agreement and Guaranty, $67,848.00 in fees approved in the Receiver's final report, and $30,476.80 in golf storage and transportation costs. (Dkt. 75 at *1-2.) Thus, because Defendants concede liability for a total of $2,153,528.71, Plaintiff argues the Court should enter a judgment in favor of the Defendants, jointly and severally, of at least that amount.

As to the additional Receiver fees that Defendants argue fall outside of the bounds of the receivership, Plaintiff asserts it is still entitled to the full amount sought. (*Id.* at *3.) Specifically, Plaintiff argues any additional, contested fees are recoverable pursuant to the parties' Agreement, which allows Plaintiff to recover, among other things, audit costs and inspection fees. (*Id.* at *4) (citing Dkt. 1 Ex. A, § 7 (authorizing recovery of "Gateway Expenses") and Annex A thereto (defining "Gateway Expenses" as "all expenses, fees, and costs incurred by GATEWAY in connection with the creation of and performance of this Agreement and the transactions contemplated hereby, including without limitation, …audit costs [and] inspection fees.")). In response to Defendant's attempt to "disparage" the Receiver for the sale of the "Companies' assets," Plaintiff emphasizes the Receiver was only appointed over Legion and, as such, had no power with respect to the collateral in the other Defendants' possession that Plaintiff and other lenders were authorized to replevin based on a Prejudgment Order of Possession in *Automotive Finance Corporation v. Arrington, et al.* (Case No. 2024CV32460). (Dkt. 75 at *5.) Plaintiff concludes, because Defendants concede nearly all of the amounts sought by Plaintiff and failed to justify denial of a portion of the Receiver's fees authorized by the parties' Agreement, judgment should be entered against Defendants, jointly and severally, in the full amount sought by Plaintiff—$2,258,857.15— plus interest as allowed by law. (*Id.*)

As an initial matter, the Court agrees with Plaintiff that Defendants concede liability for a total of $2,153,528.71, at a minimum, based on the principal balance, uncontested attorney's fees, storage and transportation costs, and the Receiver's fees and costs set forth in the Second and Final Report that Defendants did not object to. As to the additional fees Defendants argue fall "outside the scope of the receivership, it is clear that Defendants seek to relitigate the initial appointment of the receivership, which the Court determined was definitively necessary "to (i) stabilize Legion and its operations, (ii) protect and ensure the value of Plaintiff's collateral, (iii) assure Plaintiff, as Legion's senior secured lender, and Legion's other creditors that an independent officer of the court is maintaining operations and preserving the going-concern value of Legion; and (iv) insure that Plaintiff's collateral and the proceeds therefrom are not being improperly diverted to the Guarantors' and/or their other lenders." (Dkt. 40 at *5-6.) Defendants' efforts to re-adjudicate that settled, underlying Order through their opposition, fails. Additionally, the Court finds any argument that the additional fees are not recoverable, independently unavailing, because Legion agreed to appointment of a Receivership and authorized recovery for "all expenses, fees, and costs incurred… in connection with the creation of and performance of this Agreement," inclusive of the costs Defendants now contest. Since Defendants have failed to justify any denial of previously authorized fees pursuant to Plaintiff's Agreement with Legion, the Court enters judgment in Plaintiff's favor and against Defendants, jointly and severally, in the full amount sought by Plaintiff—$2,258,857.15— plus interest as allowed by law.

## II. FEES AND COSTS FROM FINDING OF CONTEMPT

Defendants next argue that Plaintiff's "Bill of Costs" in connection with the Contempt Order should be denied as untimely. Specifically, Defendants argue that Plaintiff did not seek fees until December 9, 2025, over six months after the Court entered the Contempt Order. (Dkt. 73 at *5);(Dkt, 74 at *5.) Thus, Defendants argue, Plaintiff "waived" its Bill of Cost by failing to file its Motion within

30 days of the Court's Contempt Order pursuant to L.R. 54.1. *Id.* Additionally, Defendants argue, while the Court may extend the time to file the Bill of Costs "on motion filed within the time provided," in this case, Plaintiff filed no such motion. *Id.* Therefore, they conclude, Plaintiff's Bill of Cost "shall be deemed waived" and should be denied. *Id.*

Plaintiff, in its Reply, argues the 30-day deadline Defendants rely on, is inapplicable. First, Plaintiff asserts L.R. 54.1 pertains to the taxation of costs, not fees; the Rule does not reference attorneys' fees, and the only reference to "fees" is court reporter appearance fees. (Dkt. 75 at *6); *see* L.R. 54.1(b). Second, Plaintiff argues, if any rule were to potentially apply, it would be L.R. 54.3, which requires that a "fee motion" be filed no later than 91-days after the entry of judgment. *See* L.R. 54.3(b). Such a motion, however, is defined as "a motion, complaint or any other pleading seeking only an award of attorneys' fees and related nontaxable expenses," which Plaintiff argues does not apply here since their Motion seeks both (1) judgment as to contractually owed damages following entry of judgment as to liability, and (2) fees incurred from Defendants' contemptuous conduct. (Dkt. 75 at *6.) Moreover, Plaintiff argues, L.R. 54.3 explicitly states that it "does not apply to motions for sanctions under Fed.R.Civ.P. 11 or other sanctions provisions" "[u]nless otherwise ordered by the court," which the Court did not order. (*Id.*) Plaintiff concludes, because neither of these rules apply, Plaintiff's request for attorney's fees in connection with the Contempt Order, is timely. (*See id.*)

The Court agrees with Plaintiff that the deadlines outlined in L.R. 54.1 and L.R. 54.3 are not applicable in the present case. L.R. 54.1 does not contemplate attorney's fees but instead specifically enumerates "costs" that can be recovered within 30-days of entry of judgement: transcripts, bond premiums, and fees of special masters, *see* L.R. 54.1, none of which are relevant to the present Motion or relief sought by Plaintiff. Plaintiff is also correct that the 91-day deadline outlined in L.R. 54.3 is more appropriately applied to the present Motion, but relevant here, that rule explicitly states, "unless otherwise ordered by the court, this rule does not apply to motions for sanctions under Fed.R.Civ.P.

11 or other sanctions provisions." Here, the Court will exercise its "considerable discretion in interpreting and applying [its] local rules," *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 549 (7th Cir. 2017), to determine that Plaintiff's Motion is timely. This determination is particularly important in this instance, where the Court did not require or direct the parties to follow L.R. 54.3 and where that rule explicitly states, by default, that it does not apply to sanctions Motions. *Contra Elliot v. Mission Tr. Services, LLC*, 82 F. Supp. 3d 829, 833 (N.D. Ill. 2015) (Cole. J.) (determining the deadline outlined in L.R. 54.3 applied to a motion for sanctions, contrary to the default language in the local rule, when the court specifically stated the parties should follow the rule in its order.). Accordingly, the Court enters judgment in Plaintiff's favor and against Defendants, jointly and severally, in the full amount sought by Plaintiff—$37,810.50 —for attorney's fees incurred by Plaintiff as a result of Defendants' contemptuous conduct.

**CONCLUSION**

Pursuant to the Agreement and Guaranty, the Court enters judgment in Plaintiff's favor and against Defendants, jointly and severally, in the full amount sought by Plaintiff—$2,258,857.15— plus interest as allowed by law. The Court also deems Plaintiff's Motion for Fees and Costs Pursuant to the Court's Finding of Contempt against Defendants, as timely, and requires Defendants to pay plaintiff $37,810.50 within 30 days of this Order. The Court will issue an order to show cause to Arrington, individually and as representative of the remaining Defendants, should Defendants fail to remit payment within 30 days.

**IT IS SO ORDERED.**

Date: 4/22/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge

8